# SUPREME COURT,

## STATE OF KANSAS.

## JANUARY TERM, 1882.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,

*In the matter of the petitions of* Timothy Carr and John Dillon, *for writs of habeas corpus.*

1. Forgery, *Where Wholly Consummated.* Where a person forges and utters at Kansas City, Missouri, a time-check upon a railroad company having its treasurer and treasury within this state, and such check is paid off by the agent of the company at Kansas City, who has authority to pay the valid obligations of the company, upon the supposition that such check was a true and valid instrument, the forgery is wholly consummated in Missouri, although afterward the agent sends the check to the treasurer of the company at Topeka, Kansas, and is given credit therefor on his accounts as so much cash.

2. Offense, *Where Completed.* Where a person fraudulently and by false representations obtains money of a bank in the state of Missouri, upon a false and spurious time-certificate, purporting to have been issued by a division road-master of a railroad company having its treasurer and treasury within this state, and thereafter the bank sends the certificate through its correspondent bank at Topeka for presentation to and payment by the company, and the treasurer of the company pays the same within this state, *held,* that the offense is completed in the state where the party knowingly passes and receives the money on the false and spurious certificate. In such case the bank is not the agent in sending the certificate to this state for payment, since the party passing the same has gained his full object in Missouri, and prior to the transmission of the certificate. The subsequent payment thereof in Kansas to the holder,

1 — 28 Kas.

would not be for the use and benefit of the guilty party originally passing the same.

### Original Proceedings in Habeas Corpus.

Two PETITIONS for writs of *habeas corpus,* filed in this court, January 5, 1882 — one thereof by *Timothy Carr,* and the other by *John Dillon.* The petitioners alleged that they were illegally deprived of their liberty by one W. D. Disbrow, sheriff, and keeper of the common jail of the county of Shawnee, in the state of Kansas, at the city of Topeka, in the county and state aforesaid. The facts are sufficiently stated in the opinion herein, filed at the June, 1882, session of the court.

J. C. *Tarsney,* and J. G. *Waters,* for petitioners.

A. H. *Vance,* Geo. R. *Peck,* and W. C. *Campbell,* for *The State.*

The opinion of the court was delivered by

HORTON, C. J.: Although these cases are separate and distinct, and although the offenses alleged are different, we shall consider them together, inasmuch as the facts in each case are very similar, and the cases have been presented to us at the same time. Carr and Dillon were in the employ of the Atchison, Topeka & Santa Fé Rld. Co. as section foremen, with headquarters at Kansas City, Mo. Carr was arrested for forging time-checks, Dillon for obtaining money under false pretenses from the company. Upon preliminary examinations at Topeka, in Shawnee county, Kansas, it was decided that the offenses charged had been committed; that there was probable cause to believe the petitioners guilty as set forth in the complaints and warrants, and they were ordered to give bail for their appearance before the district court of Shawnee county at the next term thereof, to answer therefor. In default of bail, they were committed to the jail of the county.

The only question presented for our determination is as to the jurisdiction of the courts of Shawnee county. On the part of the petitioners, it is claimed that the supposed of-

fenses set forth in the several complaints were commenced and consummated in the state of Missouri, and that the defendants are in no wise amenable to the criminal law of Kansas.

On the part of the counsel for the state, it is contended that the petitioners had no intention whatever of defrauding any one but the Atchison, Topeka & Santa 'Fé Rld. Co.; that they only used the banks and other parties in Kansas City as a means to accomplish their ends, and as the time-checks finally reached the treasurer of the company at Topeka, within the state, and were acepted by the treasurer as genuine, the petitioners, upon coming within the state, were liable to arrest for the offenses charged. In this connection they refer to § 21, ch. 82, Comp. Laws of 1879, which reads: "Every person, being without the state, committing or consummating an offense by an agent or means within the state, is liable to be punished by the laws thereof in the same manner as if the prisoner had commenced and consummated the offense within the state."

It appears from the evidence that the company had a freight house, office, agent, and a corps of clerks, to transact its business at Kansas City. Among other duties, the freight agent at Kansas City had authority to collect money due for freight, pay back charges on freight from other roads, and remit the money of the company to its treasurer at Topeka, Kansas. He also had authority out of the funds of the company collected by him to pay off the valid obligations of the company upon proper vouchers. Supposing the checks forged by Carr valid obligations of the company, he made payments thereon within the state of Missouri. Afterward, the checks were sent by him to the treasurer's office of the company at Topeka, and he was given credit for them as so much cash. But the agent drew no money at Topeka on the checks, and the money with which the checks were paid had never been in the treasury of the company at Topeka, or in the possession of the company within this state. It is not claimed that the agent of the company at Kansas City acted

in collusion with Carr, and upon the testimony such person was neither his guilty nor "innocent agent." As the forgeries were committed and uttered by Carr within the state of Missouri, and the forged checks actually cashed by the company in that state, the crime was wholly consummated within Missouri. Therefore, in our opinion, upon the evidence submitted for our consideration, the offense was not committed or consummated "by an agent or means within this state," and however criminal Carr may be, he must be tried and punished in Missouri —not here.

1. Forgery, where wholly consummated.

Upon Dillon's examination, it also appeared that all the transactions with which he was connected were done in Missouri. The false pretenses were made in Missouri, and the money he received was obtained by him in person in that state. As in the Carr case, so in this case, the time-checks finally reached the treasurer of the company at Topeka; but the checks came from banks in the state of Missouri to the Topeka bank and other institutions in the city of Topeka, in the regular order and course of business, and the money that was paid out of the treasurer's office in the city of Topeka on the checks was not paid to Dillon, or to any other person for him, or for his use or benefit. "If a man draws a check upon a bank with which he has no money, and hands it as a good check to another party, it is a false pretense as regards that party, but not as regards the banker." (*Rex v. Lara,* 6 Term R. 565.) Counsel for the state seek, however, to charge the sending of the check through the banks to Topeka upon Dillon. What took place after Dillon obtained the money in Missouri he did not order, and is not criminally responsible for. He gained his full object when he obtained the money at Kansas City, and it was a matter of perfect indifference to him whether the banks afterward did or did not obtain payment on the checks from the railroad company, or from any other party. It would have been perhaps much more for his benefit had the checks been lost or destroyed before reaching Topeka.

Upon the evidence produced, Dillon was certainly guilty of

the offense with which he is charged in Missouri; but can it be said he was guilty of a like offense each time the checks were transferred to a new holder? We think not. (*Regina v. Garrett*, 22 Eng. Law and Equity, 607.) These cases are unlike *People v. Adams*, 3 Den. 190. In that case, the fraud originated and was concocted in Ohio, by Adams. But it matured in the city of New York, for there the false pretenses were made, and the receipts and drafts presented through the instrumentality of innocent agents employed by Adams, and the signatures and money of the persons defrauded were obtained by Adams through such agents in that city. Nor is the case of *Commonwealth v. Harvey*, 8 Am. Jurist, 69, applicable, as in that case the defendant forged the draft at Albany, N. Y., and placed it in the hands of a broker there, to be forwarded by him to the drawee in Boston, where it was paid, and the proceeds remitted to the defendant in New York. These cases are not parallel with *United States v. Davies*, 4 Sumner, 485, where the defendant was accused of shooting from an American ship, and killing a man on board of a foreign schooner; because, upon the evidence, the parties here achieved their full wish and object upon receiving the moneys obtained by them in Missouri. The offenses, therefore, took effect in Missouri: in the one case, when Carr received payment upon the forged papers from the freight agent of the railroad company at Kansas City, and in the other, when Dillon actually obtained in person the money upon false pretenses from the banks of that city.

We fully recognize that the power of the state to punish criminals extends to all persons who, being without the state, commit or consummate violations of the penal statutes within our state, "by an agent or means within the state." Such persons, although out of the state, are, in contemplation of law, within the state. But where a forgery is perpetrated

2. Offense, where completed.

and uttered beyond the state, and the forger actually obtains the money thereon in another state, and before the false and spurious instrument reaches the limits of the state, the offense is consummated beyond this

state, and the forger is not amenable to the provisions of our statute upon coming within the state. So also where a person guilty of false pretenses in another state obtains thereby from a banker or other person in such state, money, he is guilty of false pretenses as regards the party from whom he obtains the money, and may be punished at the place where the money was so obtained by him.

After the petitioners got the money, they had no longer any interest in the uttering or preservation of the time-checks, or in the action of the banks or freight agent at Kansas City concerning them. Neither the banks nor the freight agent were moved or asked by them to send the checks to Topeka for payment, or for any other purpose. They probably foresaw and anticipated that the checks would be sent there; but it cannot be said that they wished them sent, and therefore their agents did not send or present them to the treasurer of the railroad company. The credit and money obtained upon the checks within this state were not for the petitioners' use or benefit, but solely for the benefit of the agent of the railroad company and the banks which had been defrauded by the petitioners in Missouri. If these petitioners had used the mail to collect the money from the treasurer at Topeka, or had employed the banks or the agent of the railroad company at Kansas City to collect the money for them, or had sent the checks through them for collection, then they would be guilty of crimes committed within this state through "innocent agents." Then the offenses charged against them would have been consummated "by an agent or means within this state," and although out of the state, they would have been, in contemplation of law, within the state, and the right of punishment under the statute of this state would extend to them. But as the action of the freight agent and of the banks at Kansas City subsequent to the payment of the moneys to the petitioners was the separate and independent action of said parties for their own — not the petitioners' — benefit, the petitioners cannot be held here for trial. Therefore, they must be discharged.

All the Justices concurring.