## W. L. THULEMEYER V. THE STATE.

*No. 763.　Decided June 19.*

**1. Continuance—Practice on Appeal.**—On appeal, an application for continuance will be held to have been properly overruled where the proposed witness appears not to have been a real person and whose testimony is not probably true, when considered in the light of the record in the case.

**2. Forgery of Indorsement of a Treasury Warrant—Venue—Jurisdiction.**— "The offense of forgery may be prosecuted in any county where the written instrument was forged, or where the same was used or passed." Penal Code, art. 206. *Held*, on a trial for forging the indorsement upon a treasury warrant, the venue of the prosecution is in the county in which the indorsement was made and in which the warrant was cashed by a bank, and not in the county were the treasury is located, and to which it was afterwards sent for collection by the bank which had cashed it. See the opinion for a discussion in extenso of the question.

**3. Same.**—Where a party forges an instrument and parts with it, and has no further property in or control over it, he can not be prosecuted for the forgery in some other county in which a subsequent owner or holder may have passed it.

APPEAL from the District Court of Travis. Tried below before Hon. F. G. MORRIS.

This is an appeal from a conviction for forgery, the punishment being assessed at a term of four years in the penitentiary.

The opinion states the case.

*Arthur W. Seeligson, William Brueggerhoff,* and *McLeary & Stayton,* for appellant.—In order to sustain the jurisdiction of a prosecution for forgery, it must appear from the proof that the instrument was either forged or used or passed by the defendant in the county where the venue is laid.

The evidence in this case discloses, that if any forgery was committed it was done in Bexar County; and that the defendant used and passed a warrant, on which the indorsement is alleged to have been forged, in Bexar County by selling it to the Fifth National Bank, in San Antonio; and that the said warrant was sent by the said bank to the City National Bank, at Austin, in Travis County, where the venue

is laid, and was by the said City National Bank presented to the State Treasury, and there paid. Willson's Crim. Stats., art. 206; Code Crim. Proc., art. 206; Act 28th July, 1876; Henderson v. The State, 14 Texas, 509–517, et seq.; Wells v. The State, 22 Texas Crim. App., 18; Perry v. The State, 22 Texas Crim. App., 19; Ryan v. The State, 22 Texas Crim. App., 699; West v. The State, 28 Texas Crim. App., 3–5; Landa v. The State, 26 Texas Crim. App., 580; Leggett v. The State, 25 Texas Crim. App., 535; Burks v. The State, 24 Texas Crim. App., 330; Mason v. The State, 32 Texas Crim. Rep., 95; Hooper v. The State, 30 Texas Crim. App., 414; Strang v. The State, 32 Texas Crim. Rep., 228; Hocker v. The State, ante, p. 359.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant in this case was convicted of forgery, and his punishment assessed at four years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal.

There are but two assignments of error necessary to be considered in this case. The first is the action of the court in overruling the motion for a continuance. Appellant asked the continuance in this case on account of the absence of one William M. Cook, whose residence he states he did not know, but that he had used due diligence to find out where said witness could be found; that he had employed one Kinahan, a detective, to locate said Cook, and that he received a letter, which is attached to the application, bearing date March 27, 1895, stating that he had located said Cook in Laredo, Texas; that said witness intended coming to San Antonio soon, but suggested that a subpœna be issued for said witness. The letter seems to be written from San Antonio by Kinahan to Thulemeyer, also in San Antonio. The appellant proposed to prove by said witness that he had executed to him (appellant) a power of attorney to collect the State treasury warrant which is the subject of forgery in this case. Looking at the record, we are inclined to the opinion that said Cook is hardly a real person, or, if a real person, that it would be exceedingly difficult, if not impossible, if ever to procure his attendance. The defendant himself claims to have acted in the premises under a power of attorney from this identical Cook, and while he writes to the treasury at Austin at one time, in connection with the instrument alleged to have been forged, that the said Cook was then in San Antonio, and anxiously waiting for his warrant, yet in his testimony he states that he has never seen said Cook. So that in our opinion the statement of the appellant as to what he expects to prove by said witness is not probably true.

The most serious question, however, in this case is the question of venue; appellant claiming, that if he committed any offense it was in

the county of Bexar, and not in the county of Travis. The facts in the record, briefly stated, are these:

The appellant is charged with the forgery of the following instrument:

"No. 232.              TREASURY WARRANT.              $52.77.
                        [Vignette.]
                                    "COMPTROLLER'S OFFICE,
                                    "AUSTIN, TEXAS, Sept. 19, 1894.

"The Treasurer of the State of Texas will pay to the order of Wm. M. Cook, per W. M. Cook, Jr., fifty-two & 77-100 currency dollars, for direct tax paid in Calhoun County, and charge the same to special deposit direct tax fund.        "STEPH. H. DARDEN, Comptroller.
    "——, Treasurer.                              "Chf. Clerk."

Said forgery consisted of indorsing on the back of said instrument the names "Wm. M. Cook, per Wm. M. Cook, Jr.;" and the proof shows unquestionably that this indorsement was made in the city of San Antonio, in Bexar County, and was made by said appellant for the purpose of negotiating and transferring said treasury warrant to the Fifth National Bank, at San Antonio. The witness Engelke says that he cashed same, paying the money to the appellant, and then forwarded the same to the City National Bank of Austin for collection. So far as the appellant was concerned, this was a completed transaction. He transferred the State treasury warrant by indorsement, and received the money therefor, to wit, $52.77, and he had nothing further to do with the warrant. It was no longer his property, but the property of the San Antonio National Bank. Our statute (Code of Criminal Procedure, article 206) provides as follows: "The offense of forgery may be prosecuted in any county where the written instrument was forged, or where the same was used or passed, or attempted to be used or passed." So far as we are advised, the question here raised has never been before this court, and as to the question of the statute venue, it comes before us for the first time for construction. In Strang v. The State, 32 Texas Criminal Reports, 219, the forgery by the defendant in that case was actually committed in Fisher County, but he sent his own agent, Thomas, to Nolan County, and collected the money. In that connection the court say: "Neither did the court err in overruling the objection to the admissibility of the forged instrument upon the ground that the same was passed in Nolan County by one Thomas, the clerk of appellant, and not by appellant, who was in Fisher County, because the clerk was the innocent agent of the appellant, and passed the check under the instructions of appellant." Bishop v. The State, 30 Alabama, 34, in its main features, is somewhat similar to the case of Strang, before cited. In that case, the note was forged in Dallas County and was sent through the mails from said county to Wilcox County, and the prosecution was brought in the last mentioned county. In that case, the question presented was whether a party who is at the time in one county

can, through an agent in another county, utter and publish a forged instrument, and himself be guilty of the offense in such latter county. The Alabama statute with reference to venue is similar to our own. After discussing a New York case, the court lays down the following propositions: "(1) So long as the forged instrument remains in the hands of an innocent agent of the forger, the crime of uttering is not perpetrated. (2) When the agent, being himself innocent, utters or publishes the forged instrument as true, the offense of uttering is complete, and the guilty principal, though in a distant county, is regarded as the author of the crime, and the crime is regarded as committed by him at the place where the agent uttered the forged instrument. In such case the agent is the mere instrument of his principal, and is no more guilty than any other instrumentality which a felon may employ to accomplish his end. For all criminal purposes, the agency is as unimportant as a mail carrier who bears a letter containing a forgery."

It will be observed in both of said cases that the defendants had not parted with their property in the forged instrument, but were simply using an agency for the collection of same.

But in a case decided by the Supreme Court of Kansas almost the exact question here involved was presented. In re Carr, 28 Kas., 1. In that case the subject of forgery, so far as Carr was concerned, was a time check of the Atchison, Topeka & Santa Fe Railroad Company. Carr was section foreman at Kansas City, Mo. The headquarters of the Atchison, Topeka & Santa Fe were at Topeka, in the State of Kansas. The said time checks were ultimately payable at the last named place. Carr forged the time check in Kansas City, and passed same on an agent of the company in said Kansas City. The checks were forwarded to the treasurer's office at Topeka, and the agent was given credit for them as so much cash. It was not claimed that the agent of the company at Kansas City acted in collusion with Carr. The prosecution was brought against Carr, in the State of Kansas. The court says in that case: "As the forgeries were committed and uttered by Carr within the State of Missouri, and the forged checks actually cashed by the company in that State, the crime was wholly consummated within Missouri. Therefore, in our opinion, upon the evidence submitted for our consideration, the offense was not committed or consummated 'by an agent or means within this State;' and, however criminal Carr may be, he must be tried and punished in Missouri, not here."

Dillon's case, jointly decided with the Carr case, was a case where, by false pretenses, Dillon negotiated similar time checks, as in the Carr case, to a bank in the State of Missouri, at Kansas City. The prosecution against him was also in the State of Kansas. The court, in speaking upon the question of jurisdiction, uses this language: "If a man draws a check upon a bank with which he has no money, and hands it as a good check to another party, it is a false pretense as regards that party, but not as regards the banker. Rex v. Lara, 6 Term

R., 565.   Counsel for the State seek, however, to charge the sending of the check through the banks to Topeka upon Dillon.   What took place after Dillon obtained the money in Missouri, he did not order, and is not criminally responsible for.   He gained his full object when he obtained his money at Kansas City, and it was a matter of perfect indifference to him whether the bank afterwards did or did not obtain payment on the check from the railroad company, or any other party. It would have been, perhaps, much more for his benefit had the checks been lost or destroyed before reaching Topeka.   Upon the evidence produced, Dillon was certainly guilty of the offense with which he was charged in Missouri, but can it be said he was guilty of a like offense each time the checks were transferred to a new holder?   We think not. Reg. v. Garrett, 22 Eng. Law and Eq., 607.   These cases are unlike. The People v. Adams, 3 Denio, 190.   In that case, the fraud originated and was concocted in Ohio by Adams.   But it matured in the city of New York, for there the false pretenses were made, and the receipts and drafts presented through the instrumentality of innocent agents employed by Adams, and the signatures and money of the persons defrauded were obtained by Adams through such agents in that city.   Nor is the case of The Commonwealth v. Harvey, 8 Am. Jur., 69, applicable, as in that case the defendant forged a draft at Albany, N. Y., and placed it in the hands of a broker there to be forwarded by him to the drawee, in Boston, where it was paid and the proceeds remitted to the defendant, in New York.

"These cases are not parallel with United States v. Davis, 4 Sumner 485, Federal Cases No. 14,932, where the defendant was accused of shooting from an American ship and killing a man on board of a foreign schooner, because, upon the evidence, the parties here received their full wish and object upon receiving the moneys obtained by them in Missouri.   The offense therefore took effect in Missouri—in the one case when Carr received payment upon the forged papers from the freight agent of the railroad company at Kansas City, and in the other when Dillon actually obtained, in person, the money, upon false pretenses, from the banks of that city.   We fully recognize that the power of the State to punish criminals extends to all persons who, being without the State, commit or consummate violations of the penal statute within our State 'by an agent or means within the State.'   Such persons, although out of the State, are, in contemplation of the law, within the State.   But where a forgery is perpetrated and uttered beyond the State, and the forger actually obtains the money thereon in another State, and before the false and spurious instrument reaches the limits of the State, the offense is consummated beyond this State, and the forger is not amenable to the provisions of our statute upon coming within the State.   So, also, where a person guilty of false pretenses in another State obtains thereby, from a banker or other person in such State, money, he is guilty of false pretenses as regards the party from whom he obtains the money, and may be punished at the

place where the money was so obtained by him. After the petitioners got the money they had no longer any interest in the uttering or preservation of the time checks, or in the actions of the banks or freight agent at Kansas City concerning them. Neither the banks nor the freight agent were moved or asked by them to send the checks to Topeka for payment, or for any other purpose. They probably foresaw and anticipated that the checks would be sent there; but it can not be said that they wished them sent, and therefore their agents did not send or present them to the treasurer of the railroad company. The credit and money obtained upon the checks within this State were not for the petitioners' use or benefit, but solely for the benefit of the agent of the railroad company and the banks which had been defrauded by the petitioners in Missouri. If these petitioners had used the mail to collect the money from the treasurer at Topeka, or had employed the banks or the agent of the railroad company at Kansas City to collect the money for them, or had sent the checks through them for collection, then they would be guilty of crimes committed in this State, through 'innocent agents.' Then the offenses charged against them would have been consummated 'by an agent or means within the State,' and, although without the State, they would have been, in contemplation of the law, within the State, and the right of punishment under the statute of this State would extend to them. But as the action of the freight agent and the banks at Kansas City subsequent to the payment of the moneys to the petitioners was the separate and independent action of said parties, for their own—not the petitioners'—benefit, the petitioners can not be held here for trial. Therefore they must be discharged.''

We have quoted fully from the opinion of the court, because it discusses the authorities, and is pertinent to the issue here presented. In this case, as in said case, the transaction constituting the forgery, including the absolute transfer of the forged instrument, was consummated in Bexar County, and the defendant had no further control of the State treasury warrant, nor any interest therein. He no doubt anticipated that the bank would ultimately collect the money from the treasury at Austin, but to him that was a matter of indifference. He had his money, and it was immaterial, so far as he was concerned, whether the ultimate payment of the warrant was ever procured; and, in our opinion, our statute on the subject of venue in forgery cases has a reference to some act done by the alleged forger in the county in which he is sought to be prosecuted. And whether he does this act by himself, or through some agent or procurement, is immaterial in either case. He will be equally responsible. But where he has parted with the alleged forged instrument, and has no further property in the same, or control over same, he can not be prosecuted therefor in some other county, in which some other party that may have owned said instrument has subsequently passed it.

Because the District Court of Travis County has no jurisdiction of said offense, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.