### Geo. H. Giddings v. The State.

#### No. 3051.   Decided November 30, 1904.

**1.—Unlawfully Tearing Down Fence—Mistake of Fact.**

Where the defendant under a mistake of fact, that the owner of a ferry boat and a fence to which it was fastened by a chain, did not object to the use of the boat and loosening it from said fence, pushed loose a couple of planks from a post and pulled up between these planks and the top of the post the chain, so as to release the boat, tearing neither end of these planks loose from the post to which they were fastened, he is not guilty of unlawfully breaking, pulling down and injuring the fence of another without the owner's consent.

**2.—Same—Long User Gives Consent—Absence of Notice.**

Where the evidence showed that appellant — who was charged with unlawfully breaking down the fence of another without the owner's consent — and the people generally, used a private ferry boat without any protest from said owner for quite a length of time, he, from this fact, and in the absence of notification that said owner had changed his mind, would be warranted in assuming the owner's consent; and the releasing of the boat from the fence to which it was fastened, by loosening a couple of planks on the middle post and slipping over the chain that held the boat, was not a violation of the statute.

Appeal from the District Court of Chambers. Tried below before Hon. L. B. Hightower.

Appeal from a conviction of unlawfully breaking down the fence of another without the owner's consent; penalty, a fine of $10.

The following statement taken from appellant's brief is substantially correct:—Appellant was on the west side of the Trinity River, late in the evening of July 30th, 1901, and desired to cross the river, so as to reach his home, some four or five miles east of Wallisville. At that point there is a cattle pen belonging to said Joshua Mayes, with a string of fence extending five or six panels out toward and a little into river; to this fence was tied a ferry boat, also belonging to said Joshua Mayes. When appellant approached the river, he found this boat locked to one of the posts of this fence, and took an oar from the boat and knocked loose one or two of the planks at the middle post, and slipped the chain over the top of the post and unloosed the ferry boat. Prior to that time, he had been told by the county judge that this ferry was in charge of the county, and was there for the use of the public, each party ferrying himself across the river, as there was no public ferryman. Mr. Wm. F. Mayes, son of said Joshua Mayes, stated that he was at his house on the opposite side of the river from appellant, and saw him as he started to knock loose the planks and hollered at him not to break the lock, but appellant says he did not hear him. Appellant says that he had used the boat a number of times before that, and the owner

of the boat and of the fence, Joshua Mayes, testified that he locked it because the people used it so much.

*H. E. Marshall* and *E. B. Pickett, Jr.,* for appellant.—Woodyard v. State, 19 Texas Crim. App., 516; Hooes v. State, 25 Texas Crim. App., 601; Jones v. State, 18 Texas Crim. App., 366; Coggins v. State, 12 Texas Crim. App., 109.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with pulling down and injuring the fence of Joshua Mayes, without his consent. Without going into a detailed statement of the evidence, it is shown appellant, if he violated the law, did so by pushing loose a couple of planks from a post, and pulling up between these planks and the top of the post chain, so as to release a boat fastened to the post, which he used in crossing the Trinity River at Wallisville. Neither end of these planks were torn loose from the post to which they were fastened, but simply the planks at the middle post were pushed back far enough to permit the chain to be slipped up over the top of the post. Whatever injury there was to the fence is found in that statement. Mayes, the owner of the boat, testified to his non-consent; but the facts all show this boat had been used by the public pretty generally in crossing the Trinity River, and had been so used for a long time; and that appellant, as well as the people in that section, used it whenever they saw proper. There had been some criticism of the county judge, at least, there was a conversation in which a request was made to put in a public ferry boat; but this was discouraged upon the theory that people were using Mayes' boat, and the matter thus rested. It seems to be uncontroverted that the public generally had been using this boat until within a short period of the time appellant is shown to have used it, with knowledge and consent of Mayes, and he seems to have been unaware that Mayes had decided the public could no longer use it. Coming from the west side of the river, where he had been surveying some land as county surveyor, he found the boat in the condition above indicated, and pushed back the planks as stated, as a means of loosening the boat to cross the river at this point, which was about two hundred yards wide; that he used the boat to convey himself across the river, and swam his horse. We do not believe these facts justified the conviction. It seems, as before stated, that appellant and the people generally used the boat without any protest, in fact with the consent of the owner for quite a length of time; and from this fact, appellant, in the absence of notification that said owner had changed his mind, would be warranted in assuming his consent. Our statute provides that, if an accused does anything that would be otherwise criminal under a mistake of fact, believing the fact to exist, and that he had a right to act under it, it would not be criminal. We believe that article of our Penal

Code applies here, for, as we understand the testimony, appellant was clearly of the impression that he had the right to use the boat, as he and the community had been doing for quite a length of time. We do not believe the facts justified the conviction, and the judgment is reversed and the cause remanded. ·

*Reversed and remanded.*