## T. H. VAUGHN v. THE STATE.

No. 5465. Decided November 19, 1919.

Rehearing denied March 17, 1920.

### 1.—Pure Food Act—Guilty Knowledge—Charge of Court.

Where, upon trial of a violation of the Pure Food Law, the defense was that the defendant knew nothing of any foreign ingredients in the alleged article of food, it being alleged in the information that he sold sausage which was adulterated by adding sulphite to it, a requested charge that before they could convict defendant, the evidence must show that he knew, or by the use of reasonable diligence could have known, that sulphite had been added to said food should have been given and a refusal to do so was reversible error.

### 2.—Same Statutes Construed—Guilty Knowledge.

Where, upon rehearing, the State contended that the element of knowledge of adulterated food is not involved in this statute and that it is not incumbent upon the State to allege or prove guilty knowledge with reference to the affirmative acts prohibited, because the statute was amended in which such knowledge was expressly made necessary, held, that the omission of this element in the new statute does not imply the legislative intent that in future prosecutions it should not be incumbent upon the State to allege or prove guilty knowledge on the part of the defendant.

**3.—Same—Rule Stated—Statutes Construed.**

This court is unable to conclude that in enacting the pure food statute the Legislature intended to repeal articles 46 and 47 of the penal code providing that a mistake of fact will excuse the defendant from punishment, and under the well-recognized rule that in the enactment of a statute the previous construction by the courts of laws similarly framed is presumed to have been adopted, in the absence of some declaration showing a contrary intent. Distinguishing: Ex parte Drane, 80 Texas Crim. Rep., 543, 191 S. W. Rep., 1157.

Appeal from the County Court of Fannin. Tried below before the Hon. A. P. Bolding, judge.

Appeal from a conviction of a violation of the pure food law; penalty, a fine of twenty-five dollars.

The opinion states the case.

*J. M. Baldwin* and *Thos. P. Stevens,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, O. L. Couch, County Attorney, for the State.—Cited: Cases cited in the opinion.

LATTIMORE, Judge.—Appellant was charged with a violation of the provisions of Chapter 2, Title 12, of our Penal Code, known as the "Pure Food Law" of Texas, the information and complaint being substantially as follows:—

—"that one T. H. Vaughn, late of the County of Fannin, heretofore, viz: on or about the 20th day of February, A. D. 1919, with force and arms, in the County of Fannin, State of Texas, did then and there in the County and State aforesaid, have in his possession with intent to sell, and did then and there offer and expose for sale a certain article of food, to wit: Ground Meat, which article of food was then and there adulterated in this: He the said T. H. Vaughn did then and there offer and expose for sale said Ground Meat, which was then and there an article of food to which had been added a Sulphite, contrary to the forms of the Statute in such cases made and provided and against the peace and dignity of the State."

The facts appearing in the record show appellant to be a man approximately sixty-three years of age, of good standing and reputation in his community, and who has never been arrested or charged with any offense prior to this one. He has been engaged in his present business as a butcher for four years, in the town of Honey Grove. In this case he is charged with selling ground meat, to wit, sausage, to which had been added sulphite.

An inspector of the Pure Food Department, at Austin, visited and inspected appellant's butcher shop, pronounced it sanitary, but took a sample of the sausage and forwarded it to the Department for chemical analysis, upon which analysis the chemistry department claimed to have found sulphite. When informed of this, ap-

pellant vigorously denied knowing what sulphite was, or that it was present in said sausage; and testified on his trial that said sausage was composed of three parts fresh beef, killed by his butcher on the day or the day before said inspection, and one part pork trimmings, the latter having been shipped to him by a packing concern in Oklahoma City. He further swore that he had been making and selling sausage of this same combination for several years, and had never used sulphite or heard of it. In the main facts he was corroborated by his butcher, and this evidence is undisputed in the record. Under this state of the case, appellant asked of the trial court the following charge, which was refused:

"Although you might believe from the evidence beyond a reasonable doubt that the defendant offered and exposed the food charged in the information, for sale, and that a sulphite had been added to said food, yet unless you believe from the evidence beyond a reasonable doubt that the defendant knew, or by the use of reasonable diligence he could have known, that sulphite had been added to said food (if it had been added) you will find the defendant not guilty."

This charge should have been given. Appellant's only defense to the prosecution was that he knew nothing of any foreign ingredients in the sausage, and we believe he was entitled to an affirmative presentation of his defense to the jury.

By the terms of Article 710, of said Chapter, above mentioned, the acts therein made punishable must be done "wilfully," which term includes both intent and knowledge. By the terms of Article 715 of said Chapter, the matters therein are only penal if done "knowingly." Article 711 of said Chapter, prescribing the punishment affixed to the offense charged against appellant, reads as follows:

"Whoever shall do any of the acts or things prohibited, or willfully neglect or refuse to do any of the acts or things enjoined by this Act, or in any way violate any of its provisions, shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than $25 nor more than $200."

We are convinced that it was not the purpose of the framers of this law to make any distinction between those who do, and those who leave undone, any act in violation of the various provisions of said statute and accordingly hold that the violators of the affirmative provisions of the law, as well as those whose sins are of omission, in a proper case, are entitled to have the question of knowledge submitted to the jury.

We do not think the other errors complained of will likely occur on another trial, and we will not discuss them.

For the error indicated, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

March 17, 1920.

MORROW, JUDGE.—The correctness of the conclusion expressed in the original opinion is assailed upon the proposition that in the offense under consideration the element of knowledge is not involved. The statute in force supplants an older one in which knowledge was expressly made an element. See Art. 430, Acts of 1895; Teague v. State, 25 Texas Crim. App., 577. The omission of this element in the new statute, Article 704, Penal Code, implies an intent that in future prosecution it should not be incumbent upon the State to allege or prove guilty knowledge with reference to the affirmative acts prohibited. This principle would go in the enforcement of this law to the same extent that it does with reference to other statutes in which the elements of intent or guilty knowledge are absent. In the construction of the statutes of this character, i. e., those in which neither guilty knowledge nor intent were made by statute essential elements, the American courts have expressed divergent views. See Wharton's Crim. Law. Vol. 1, Sec. 112. The rule in Texas has been affected by Article 46 and 47 of the Penal Code also. In Article 46 it is provided:

"No mistake of law excuses one committing an offense; but, if a person laboring under a mistake, as to a particular fact, shall do an act which would otherwise be criminal, he is guilty of no offense." and Article 47 is as follows:

"The mistake as to fact which will excuse, under the preceding article, must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct; and it must also be such mistake as does not arise from a want of proper care on the part of the person committing the offense."

Our statute on bigamy is one in which the elements of guilty knowledge and intent were omitted, but it has been held since an early date that the statutes quoted above were to be considered in a prosecution for this offense, and would the mistake appearing have the effect of relieving the offender from the criminal consequences of the unlawful marriage. Watson v. State, 13 Texas Crim. App., 76; Alonzo v. State, 15 Texas Crim. App., 378; Hildreth v. State, 19 Texas Crim. App., 195.

A similar ruling was applied to the statute prohibiting one from allowing a minor to remain in a pool hall. See Article 1053, Penal Code; Simpson v. State, 58 Texas Crim. Rep., 254. For other examples see Vernon's Texas Penal Code, Vol. 1, p. 26, notably among them being numerous cases applying the rule to the sale of intoxicating liquors under a mistake of fact. See Reed v. State, 53 Texas Crim. Rep., 4; Covington v. State, 51 Texas Crim. Rep., 48; Patrick v. State, 45 Texas Crim. Rep., 588.

Many cases in other states are available in which in the enforcement of the Pure Food regulations the absence of knowledge on the part of offender has been held no defense. See ruling Case Law, Vol. 11, p. 1128. In others a contrary rule has been applied; Hunter v. State, 73 American Decisions, 164.

The punishment of one for an offense when he is able to show that the act was done without guilty knowledge or intent is contrary to the general principles of criminal law. Wharton's Crim. Law, p. 141. To this principle our courts have adhered when their action was a departure from the rule prevailing in some of the other states. See Wharton's Crim. Law, Sec. 108; and the statutes mentioned, Arts. 46 and 47, give legislative emphasis to this rule. One of the sections of the statutes under consideration, Section 708, is susceptible of the construction that the Legislature intended to exempt from punishment one who committed an act violative of the statutes without knowledge. This provision provides that no dealer shall be prosecuted who can establish a guaranty signed by the jobber or manufacturer, whether in this State or another, that the article in question is not adulterated. We are unable to conclude that in enacting the Pure Food statute, the legislature intended to repeal Arts. 46 and 47 *supra.* At the time it was enacted there were many criminal statutes in force, some of which have been adverted to, in which guilty knowledge was not made an element of the offense, and these statutes, as above pointed out, notably in the intoxicating liquor statute, have been construed by the courts as not repealing the statutes recognizing a mistake of fact as a defense. The general and well recognized rule, that in the enactment of statutes the previous construction by the courts of laws similarly framed, is presumed to have been adopted in the absence of some declaration showing a contrary intent.

It is our opinion, therefore, that in the administration of the statute in question the defensive theory of mistake as set out in the articles of the statute mentioned is available. We find nothing in the case of Ex parte Drane, 80 Texas Crim. Rep., 543, 191 S. W. Rep., 1157, opposed to this view. The evidence in the instant case, presenting the theory of want of knowledge and of the absence of facts from which knowledge would be inferred, raised an issue which the appellant, prosecuted for a criminal offense, was entitled to have the jury determine.

The rehearing is denied.

*Overruled.*