WOODY TOWNSEND v. THE STATE.

No. 15190. Delivered April 27, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 696.

The opinion states the case.

Paul D. Page and P. C. Maynard, both of Bastrop, and D. J. Pickle, W. D. Hart, and A. M. Felts, all of Austin (J. H. Powell, of Bastrop, on appeal only), for appellant.

Henry Brooks, District Attorney, and Lloyd W. Davidson, State's Attorney, both of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is extortion; penalty assessed at confinement in the penitentiary for two years.

The offense charged is denounced by article 365, P. C., 1925, which is in the following language: "If any officer or person authorized by law to demand or receive fees of office, shall wilfully collect for himself or for another any fee or fees not allowed by law, or any money as a purported fee for a service or act not done, or any fee or fees due him by law in excess of the fee or fees allowed by law for such service, he shall be confined in the penitentiary not less than two or more than five years for each offense."

The indictment charges that the appellant, while sheriff of Bastrop county; * * * Did then and there as such officer unlawfully, extorsively and wilfully demand and receive from the State of Texas, fees for services not performed in this, to-wit:

"Three & 40/100 ($3.40) Dollars, as and purporting to be a fee for traveling 34 miles claimed to have been actually and necessarily traveled by him in serving a witness subpoena on H. H. Wilson on February 14, 1931, in Cause No. 3164, on the Docket of the District Court of Bastrop County, Texas, for the 21st Judicial District of Texas, entitled the State of Texas v. Clarence Fort, when in truth and in fact the said Woody Townsend did not travel said 34 miles or any part of said distance in the execution of said process, and when in truth and in fact he did not perform said service."

As understood by the writer, an issue of fact arose with reference to whether Deputy Sheriff Wallace falsely stated the mileage traveled by him in serving the subpoena on Wilson. Wallace claimed that in going to and from the place at which the subpoena was served, he traveled thirty-four miles. Wilson denied that he was served with a subpoena at a point requiring thirty-four miles of travel. In support of Wallace's testimony to the effect that service was made at the distance stated, there was testimony introduced by the appellant in addition to that of Wallace; and circumstances were introduced by the state tending to support the controverting evidence of Wilson.

In the account the item in question appeared thus:

*　　*　　*　　　*　　　*　　　*

"2　14　31　H. H. Wilson @ 50c
　　　　　　Traveled 34 miles on SE di-
　　　　　　rection from County seat
　　　　　　@ 10c per mile　----------　3.90"

In paragraph V of the court's charge the jury were instructed as follows: "Now * * * if you believe from the evidence, beyond a reasonable doubt, that the defendant * * * as Sheriff of Bastrop County, Texas, * * * did then and there, as such officer, unlawfully, extorsively and wilfully demand and receive from the State of Texas, fees for services not performed, in this, to-wit: Three and 40/100 ($3.40) Dollars, as and purporting to be fees for traveling thirty-four (34) miles, claimed to have been actually and necessarily traveled by him in serving a witness subpoena on H. H. Wilson, on February 14, 1931, in Cause No. 3164, on the docket of the District Court of Bastrop County, Texas, entitled 'The State of Texas v. Clarence Fort,' when in truth and in fact the said Woody Townsend, nor any of his deputies, traveled said thirty-four miles or any part of said distance, and when in truth and in fact he had not performed such services for which he demanded, received and collected

from the State of Texas said sum of $3.40 as a purported fee, you will find the defendant guilty."

The paragraph quoted and other parts of the charge are assailed by the appellant in many particulars. Among other criticisms, there is a complaint of the failure of the court to define in the charge the meaning of the term "wilfully" as used in the statute and indictment.

In the case of Thomas v. State, 14 Texas App., 200, it was said: "When used in a penal statute the word 'wilful' means more than it does in common parlance. It means with *evil intent*, or legal malice, or without reasonable ground for believing the act to be lawful."

In the case of Trice v. State, 17 Texas App., 43, it was said: "When the word *wilful* is used in a penal statute to characterize the forbidden act, it means *evil intent* or legal malice, or without reasonable ground to believe the act to be lawful; and the court charging a jury upon a case involving this question, should, as an essential part of the law of the case, instruct the jury in the legal meaning of the term *wilful.*"

The case last mentioned and from which the quotation is taken was decided in the year 1884. It was preceded by other cases to the same effect. Since that time, so far as we are aware, there has been no departure from the principle stated, namely, that in a case where the statute defining the offense makes the guilt of the accused dependent upon proof of the criminal act described in the statute, which, to be criminal must be wilfully done, an essential part of the instruction to the jury is a definition of the term "wilful," in substance, as that term is defined in the precedents cited above. When the omission has been made the subject of proper exception, the error has been regarded as harmful. In many instances reflected by the reports of decisions rendered, the principle stated has been applied and emphasized. See Windon v. State, 56 Texas Crim. Rep., 198, 199 S. W., 309, 310, in which case Judge Ramsey, writing the opinion of this court, after citing older cases, requiring a charge defining "wilful" where it was a part of the offense as defined in the statute, said: "It seems to us that by analogy, as well as based on authority, it was important, if not indispensable, to the protection of appellant, that the court should have given the definition of the term."

Similar emphasis is given to the principle stated by this court, speaking through Judge Davidson, in the case of Knight v. State, 71 Texas Crim. Rep., 36, 158 S. W., 543. A like expression was made by the same distinguished judge in the case of Hays v. State, 76 Texas Crim. Rep., 213, 173 S. W., 671

An examination of the two cases cited by the state, namely, Johnson v. State, 71 Texas Crim. Rep., 428, 160 S. W., 964, and Armstrong v. State, 119 Texas Crim. Rep., 593, 46 S. W. (2d) 987, 988, demonstrates that they, in each instance, reaffirm the soundness of the principle under consideration. In Johnson's case there was no exception to the

charge. In it were embraced all of the elements of the definition of "wilfully" as set forth in the precedents. In Armstrong's case, supra, the crime was not one in which "wilful" was made a part of the offense. In the course of the opinion it was said: "If an offense is made to depend upon the fact that it is 'wilfully' done, it is necessary for the trial judge to define the word 'wilful'."

In the present case, the defensive theory was presented by the appellant through his own testimony and by that of his witnesses that the alleged crime was not done with evil intent or legal malice, but was done with reasonable ground for believing that it was lawful. In fact, the evidence presented by the accused was probably such as to invoke the principle declared in article 41, P. C., 1925, wherein it is said: "If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense."

The defensive theory advanced by the accused in the present instance is in substance that in verifying the account and presenting it to the state comptroller and receiving warrant, if in fact it contained improper items which were erroneously treated by him as correct, his conduct was due to ignorance of the vice and under a mistake of fact. On the subject, see Giddings v. State, 47 Texas Crim. Rep., 360, 83 S. W., 694; Simpson v. State, 58 Texas Crim. Rep., 253, 125 S. W., 398; Vaughn v. State, 86 Texas Crim. Rep., 255, 219 S. W., 206; Windon v. State, 56 Texas Crim. Rep., 198, 119 S. W., 309.

The appellant, Woody Townsend, was elected sheriff of Bastrop county in 1925 and continued to hold that position up to the time of his indictment, which was filed on the 18th day of September, 1931. In substance, the appellant's testimony in his own behalf, is as follows: During the January and February terms of court of Bastrop county, he was in ill health. Due to such condition and the volume of business to be transacted during the term of court, he found it necessary to rely upon his deputies, of whom four served regularly and at times several extra deputies were employed. Instructions were given by the appellant to his deputies enjoining them to make proper return reflecting only the work necessarily done and to refrain from violation of the law. One of the deputies was J. F. Milton, upon whom was imposed the duty of making out the accounts for the January and February terms of court of 1931. The account introduced in evidence by the state was prepared by J. S. Milton and was in his handwriting. Milton signed the account "Woody Townsend." The account consists of approximately 4,000 items, each showing a separate transaction, including the work done and fees charged. Appellant testified that he did not scrutinize the account, but had perfect confidence in the deputy who prepared it, by whom appellant was assured that the account had been thoroughly checked over and was correct. Appellant had no knowledge that the account was incorrect in any par-

ticular, but, on the contrary, believed that it reflected the true facts. He did not see the item in the account charging $3.40 for summoning a man by the name of Wilson at Smithville (the transaction upon which the indictment was founded), and had no knowledge or information touching it other than that given him by the deputy above mentioned, who prepared the account for submission to the state comptroller. After receiving the account from his deputy, appellant took it to the comptroller's office at Austin, delivered it to the clerk of the sheriff's department of that office, and received in person a warrant for the amount of the account.

Appellant testified that, if he had known that the item of $3.40 in the account was not correct, he would have received no money for it, but would have eliminated it from the account. In performing the work of the sheriff's office, it was necessary to rely to a large degree upon deputies. The appellant had been a peace officer for thirty-nine years. He was familiar with the duties of peace officers and the manner of their compensation.

It appears that the account bore the approval of the district judge as required by law.

It seems that after the inaccuracy in the account was asserted by the state auditor, the appellant (according to his testimony) appeared before the grand jury and stated that he thought a careful checking of the account would show an overcharge of $113. He stated, however, that he had no knowledge of any inaccuracies at the time the account was presented and the warrant received.

The state introduced testimony tending to show that items other than that described in the indictment were improper; that is to say, that by virtue of them there was included in the warrant received by the appellant sums of money which had not been earned. The state also introduced testimony tending to show that in the instances enumerated the charge for mileage was in excess of the amount which the facts justified. The admissibility in evidence of the testimony mentioned is challenged upon the contention that the items were collateral and extraneous offenses and that their reception in evidence was violative of the general rule excluding extraneous offenses and embraced in none of the exceptions to that rule.

The offense charged is that the appellant, being a peace officer, "did demand and receive from the state fees for services not performed." This is based upon article 365, P. C., 1925. The demand for the fees was embraced in an account containing a number of items, and the reception of the fees was likewise in a lump sum of several thousand dollars, being the aggregate amount of fees listed in the account presented by the appellant and embraced in the warrant which he received from the comptroller of the state.

Apparently before any testimony directing the attention of the jury to the several items which are the basis of the appellant's complaint now

under consideration, the account containing all of the items was introduced before the jury. The account prepared by the appellant and presented to the comptroller, upon which he received the warrant, was introduced in evidence apparently without objection. It is conceived that the principle and restrictions applicable to the introduction in evidence of proof of collateral and extraneous offenses are not applicable. The obtaining of the warrant upon the account included all the items exhibited in the account. By presenting the account, demanding the payment thereof and receiving the warrant for it, the appellant, at least by implication, vouched for the correctness of all of the items in the account. It is believed that as the matter is presented, the state was privileged to introduce evidence tending to show that items in the account, in addition to that mentioned in the indictment, were not a valid charge against the state of Texas. As the indictment is drawn, it is obvious that no conviction could be based upon any part of the account except the item described in the indictment. However, on the issue of knowledge of the appellant and the intent with which he acted, the evidence and the facts bearing upon each of the items of the account were relevant to the issue involved.

In instructing the jury touching the use that might be made of the evidence tending to show that there were other irregularities in the account, the court framed his instructions in a manner which upon another trial, it is thought, should be modified. The subject of system is not deemed to be involved. However, it is not to be understood that the charge on the subject as framed and found in the record would be proper cause for a reversal of the judgment. As the record is understood, the appellant, after personally receiving the warrant for $4,449.20 at the hands of the state comptroller at the Capitol in Austin, took the warrant to Bastrop, where he lived, endorsed the warrant, handed it to the bank, where it was placed to the credit of Woody Townsend's account. The warrant was sent by the bank in Bastrop to its correspondent in Austin, who received the amount of it from the state treasurer. Due to this state of facts, the appellant insists in his brief that the venue in Travis county was not proved. There is some doubt whether the record is in such shape as justifies the court in discussing the question. However, due to its importance as bearing upon another trial, we have deemed it proper to give the subject some attention in this opinion.

On the delivery of the warrant to the bank in Bastrop, a receipt for $4,449.20 was issued containing the following:

"Deposit Ticket

"Bastrop, Texas                    Feb. 27 1931

"Deposited for Woody Townsend with Citizens State Bank

"All Items on Other Banks received subject to final payment."

The warrant was sent by the bank at Bastrop to the American National Bank at Austin, and was paid by the state treasurer. The

amount of money called for by the warrant was paid out of the state treasury and delivered to the American National Bank through the Austin Clearing House.

In the absence of a special statute fixing venue, it is a general rule that the prosecution should be in the county where the offense is committed. See Holden v. State, 1 Texas App., 225; Michie's Digest of Tex. Cr. Rep., vol. 5, p. 82. Whether the venue for the offense denounced in article 365, P. C., is in a given county is a question of fact. The state can only pay claims for fees of office by the procedure laid down in the statute, namely, by warrant issued by the comptroller upon the properly verified and approved account of the claimant of the fees. The warrant, when issued, fixes the right of the owner of the fees to the amount of the appropriation in the hands of the state treasury covered by the warrant. In the present instance, the warrant having been obtained by the appellant in person in the city of Austin, he had the right to present it to the treasurer and acquire the amount of the warrant in money. If he had done so, and received payment, no question of venue could possibly have arisen. By the appellant's own election, he failed to present the warrant to the treasurer in person, but took it with him to his home in Bastrop county, and after endorsing it, he delivered it to his banker, who placed the amount of the warrant to the credit of the appellant under a written contract that the credit was subject to final payment of the warrant. The banker sent the warrant to its correspondent in Austin and through it obtained the money from the state treasurer, thereby rendering absolute the entry to the appellant's credit. If the appellant had presented the warrant to the treasurer and payment had been refused, or if after receiving the warrant he had found it defective in amount, or for other valid reasons he had refused to attempt to collect it at the office of the state treasurer, it might have been plausibly contended that the reception of the warrant from the comptroller did not constitute the payment of the fees as contemplated in the statute. However, having appropriated the warrant under the circumstances stated, it would seem that the venue of the offense was properly laid in Travis county. A contrary conclusion; that is, that the appellant, after receiving the warrant, might select the place of venue by simply taking it to some locality for collection would lead to an absurdity, for the reason that if the appellant was privileged to fix the location of the prosecution by his own volition, he might, by sending or taking the warrant to another state, defeat the prosecution entirely, a thing which it cannot be assumed that the venue statute or the statute under which the prosecution is formed, contemplates or permits.

Further, on the subject of venue, the following remarks are deemed pertinent: The reception of the proceeds of the warrant after it was collected at Austin by his agent, innocent of the alleged vice in the account, would affect the appellant with the collection of the funds in

Travis county. The statutory law upon the subject is article 68, P. C., 1925, which reads as follows: "If any one by employing a child or other person who cannot be punished to commit an offense, or by any means, such as laying poison where it may be taken and with intent that it shall be taken, or by preparing any other means by which a person may injure himself and with intent that such person shall thereby be injured, or by any other indirect means cause another to receive injury to his person or property, the offender by the use of such indirect means becomes a principal."

On the subject, Mr. Bishop, in his work on Criminal Law (7th Ed.), p. 649, states the following: "One plain proposition is that there can be no crime without a principal. There may be more principals than one, but there must be at least one. Therefore a man whose sole will procures a criminal transaction is principal, whatever physical agencies he employs, and whether he is present or absent with the thing is done."

See, also, Walls v. State, 43 Texas Crim. Rep., 70, 63 S. W., 328; Houston v. State, 98 Texas Crim. Rep., 280, 265 S. W., 585; Branch's Ann. Tex. P. C., p. 1315, sec. 2428. The facts, it is believed, are distinguishable from those which control the decision in Thulemeyer v. State, 34 Texas Crim. Rep., 619, 31 S. W., 659, the conclusion in which is deemed sound. The same is true in Dechard v. State (Texas Crim. App.), 57 S. W., 813; that is, it is on a state of facts presenting a legal principle differing materially from the facts under consideration in the instant case.

The Constitution and the statutes on the subject of venue are not uniform in all of the jurisdictions of the United States. The law in this state fixing the venue of a felony in a given locality is not absolute to a degree that it may not be waived by the accused. See Taylor v. State, 81 Texas Crim. Rep., 347 (see page 356 and authorities collated); also, 197 S. W., 196, 200. The facts in the case of Burton v. United States, 196 U. S., 283, 25 S. Ct., 243, 49 L. Ed., 482, are not deemed analogous to those under consideration to the degree contended by the appellant. In that case it was averred in the indictment that the defendant duly endorsed checks which were paid to him by the bank upon which they were drawn in the city of St. Louis. On the trial it was developed that the averment of the place where the different checks were received and paid was not true. On the contrary, the evidence was wholly undisputed that each of them was received by the defendant in the city of Washington and by him endorsed and deposited with the Riggs National Bank of Washington, D. C. In due course of business, the checks were paid by the Commonwealth Trust Company of St, Louis, Missouri. Nothing in the case indicates that the checks were taken out of the city of Washington for collection, but it appeared ocnclusively that the only connection which the accused had with the checks or with the proceeds thereof was in the city of Wash-

ington. It would be interesting to give a more complete analysis of the opinion but lack of space forbids our doing so.

There are other matters raised in the briefs and record, a discussion of which is pretermitted. Some of these matters relate to inaccuracies in the charge of the court; some of them relate to the alleged misconduct of the prosecuting attorney. It is assumed that these matters in their present form will not occur upon another trial.

Whether the appellant had knowledge that the account which he presented and for which the warrant was issued to him knew at the time the warrant was obtained that the item of $3.40 described in the indictment was an unlawful charge against the state is of vital importance. Unless the appellant wilfully and with knowledge of the vice in the account, intended to profit by the wrong done the state, he could not, under the law defining the offense, be legally convicted. The jury should have been told the legal meaning of the term "wilful," and the failure of the charge of the court to do so constitutes a harmful error which leaves this court no choice other than to order a reversal of the conviction, which is accordingly done.

*Reversed.*

ON APPELLANT'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant courteously but earnestly insists that we erred in holding that the venue of the offense, if any, charged against him, was properly laid in Travis county. The indictment charged that appellant wilfully "Demanded and received from the State of Texas," a named sum of money purporting to be a fee for a certain official service, when in fact the service was not rendered. Most of the argument in appellant's motion against the correctness of our conclusion regarding venue seems directed at what we said relative to appellant having gotten his warrant in Travis county. We were merely stating the law applicable to the facts appearing, and did not intended to base our opinion that the venue of the trial was in Travis county, upon the fact that the warrant was gotten from the comptroller by appellant in Travis county. We have carefully considered appellant's argument in this regard, and are still of opinion that the venue was properly laid in Travis county, and wish to say, in addition to what we said originally, that since fees payable by the state are payable by and out of the state treasury, which is located in Austin, Travis county, Texas, the venue of every illegal collection and receipt of state owned fees prosecuted under article 365, P. C., would appear in every case conceivable by us at this time to properly be laid in Travis county, unless otherwise fixed by statute. The question of demand aside, the state parts with no fees, and is not deprived of any money as fees, nor does the officer or other person authorized to demand and receive fees, who holds fraudulent warrants or evidences of indebtedness against the state treasury, receive the money thereby or therein illegally called for,

in so far as receipt thereof is made illegal by article 365, P. C., until same has been paid by or from the state treasury. The officer or other person authorized by law to demand or receive fees from the state of Texas, who wilfully uses an innocent agent, or wilfully sets in motion the machinery through whose operations, without knowledge of the wrong, the money is taken from the state and out of its treasury,—no matter where he starts his machinery or procures his agent,—must be held triable at the place where the money is gotten from the state, i. e., the place where the offense of reception of state funds is consumated or effected, and where the state parts with its money upon the false warrant or account.

In Sikes v. State (Texas Crim. App.), 28 S. W., 688, the appellant was in Houston, Texas, and induced an innocent agent, the freight agent of a railway company in Williamson county, Texas, some 200 miles distant, to remove from the owner's possession in Williamson county certain property, and to send it to him at Houston. Judge Hurt said: "The freight agent at Round Rock, who did take the wheels, was the innocent agent of appellant. He took them under the direction and at the request of appellant. He acted for him, and his possession was the possession of appellant. The agent was innocent of any guilty participation in the taking. The appellant was therefore properly indicted as the principal in the offense. The property was taken by Douglas, as the innocent agent of appellant, in Williamson county, and, as his acts were attributable directly to the appellant, the venue was properly laid in that county, for in law and in fact appellant took the property in that county. He who acts through another acts himself. Suppose that appellant had sent some one to Round Rock to get the wheels for him, and such person, being innocent in the transaction, had taken the wheels away. Is there any question that appellant would have been guilty as principal, or that the offense would have been committed in Williamson county? We think not."

The same matter is discussed and authorities cited in Houston v. State, 98 Texas Crim. Rep., 284-5, 265 S. W., 585. The fact that the officer or other person whose account, warrant, etc., was the basis of the prosecution, and who inaugurated the movement whose consummation took the money out of the treasury, may have deposited such warrant or sold it outright in Bastrop, Texas, or Washington, D. C., would not seem in the least to affect the question of venue of the prosecution; nor would the fact that such warrant had to or did pass through various innocent hands or channels before it came to the state treasury in Travis county where the state is by such means induced to part with its money, alter the principle or affect the question of venue, under a proper application of article 68, P. C. The presence in our statute of this article and its interpretation by our courts makes inapplicable authorities cited by appellant. By what

we have above said we do not wish to be understood as holding that one who by the use of a false warrant or evidence of indebtedness against the state defrauds some private person, may not be tried for such act in the county where it takes place.

Appellant urges that the indictment is bad; that the statute penalizes him who "collects" the false fee, while the indictment herein charges that appellant did so "demand and receive" such fee. It is the rule in this state that an indictment will not be bad if the verbiage thereof be of like or identical import as that used in the statute. Many cases are cited by Mr. Vernon in his Annotated C. C. P. under article 405 thereof, and other articles of the statute relating to indictments, which uphold the rule. Appellant specially insists that the indictment is bad for the reason that it does not state in so many words that the fee, etc., was received by appellant "for himself" or "for another," this being the language of said article 365, supra. We were of opinion originally, though we did not write upon the question, that the averment of the indictment, considered as a whole, makes plain that it was intended to charge the reception of the fee by appellant for himself. There seems no fundamental difference between the crime of an officer wrongfully collecting a fee as for himself or for another. The punishment is the same, and the element of wilfulness is necessarily in each case, but in the case before us it is alleged that the unlawful fee collected by appellant was a fee "for traveling thirty-four miles claimed to have been actually and necessarily traveled by him in serving a witness, * * * when in truth and in fact the said Townsend did not travel said thirty-four miles * * * and did not perform said service." It occurs to us that no possible doubt could exist of the fact that this language plainly charges a collection of the fee for himself.

The other points stressed by appellant is that the approval of appellant's account, containing the item now urged as wrongful, by the district judge of Bastrop county prior to the time said account was presented to the comptroller and the warrant issued to appellant thereon, was a judicial act with the full force and effect of a judgment of a court of competent jurisdiction, and that until such approval has been set aside in some direct attack thereon, it must stand as final and conclusive in appellant's favor. We think we correctly decided this point originally, but forbear a discussion of this contention in view of the fact that in the recent case of Rogers v. Lynn et al., 49 S. W. (2d) 709, our Commission of Appeals, Section A, in conjunction with and by direction of the members of our Supreme Court, has decided the same proposition adversely to appellant's contention, and overruled the authorities relied upon by him. We see no reason for trying to add to the discussion had by the Supreme Court in its opinion thus deciding, nor do we have any desire to hold to the contrary.

Being unable to agree with appellant, the motion for rehearing will be overruled. *Overruled.*