Norberto CAPETILLO, Appellant,

v.

The CROSBY COUNTY FUEL ASSOCIA-
TION, Appellee.

No. 7639.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 10, 1966.

Brown, Shuman & Harding, Lubbock, for appellant.

McWhorter, Cobb, Johnson & Cobb, Crenshaw, Dupree & Milam, Cecil Kuhne and Tom S. Milam, Lubbock, of Counsel, for appellee.

CHAPMAN, Justice.

Plaintiff, Norberto Capetillo, sued Crosby County Fuel Association for damages to his person resulting from anhydrous ammonia escaping from a pop-off valve on a fertilizer tank which contained liquid fertilizer. The parties will be referred to as in the court below.

The suit was based both upon specific grounds of common law negligence, and upon liability without fault—allegations of breach of implied warranty. The trial court sustained exceptions to plaintiff's pleadings that asserted a cause of action grounded solely upon implied warranty, such exceptions, in effect, being leveled at the failure of the pleadings upon their face to show contractual relations or privity between plaintiff and defendant. The case was then tried and submitted to the jury upon 38 issues of negligence of defendant and contributory negligence of plaintiff.

The jury found no issues or series of issues of negligence against defendant upon which a verdict and judgment could be based for plaintiff under the negligence theory; absolved plaintiff of any grounds of contributory negligence; found the accident was the result of an unavoidable accident; and answered, "None" to the damage issues.

The appeal is based solely upon alleged error of the court in sustaining special exceptions to plaintiff's asserted cause which sought to place upon defendant liability

under the implied warranty theory. The record is before us upon briefs and the transcript, without a statement of facts.

Plaintiff's pleadings allege in effect that defendant sold anhydrous ammonia fertilizer to farmers, including plaintiff's employer, Johnny Nunnley, and as an inducement to attract customers, furnished the tank in question owned by defendant on a bailment basis for the convenience of the farmers in applying the fertilizer to their land; that the pop-off valve was located adjacent to the outlet controls on the tank and anyone using the outlet controls would be in close proximity to the pressure relief valve; that when said valve popped off it allowed ammonia vapor liquid to escape under pressure; and that it did pop off while plaintiff was using the outlet controls and sprayed ammonia liquid and vapor upon plaintiff to his serious damage.

There were also allegations that the tank was negligently designed in such manner as to creat a hazardous condition in the event the relief valve popped off while one was attempting to remove the contents thereof; that defendant in furnishing the tank for application of the fertilizer impliedly warrantied it was satisfactory for use for the purpose for which it was intended; i. e., storage under pressure of anhydrous ammonia fertilizer and removal of the contents thereof; and that defendant has breached such warranties.

The manufacturer of the tank was not sued, so we have a facet in the strict liability field in which the plaintiff seeks to recover against a "middle man" rather than a manufacturer. We have tried to read all the Texas appellate court opinions from Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942) to Cruz v. Ansul Chemical Company, Tex.Civ.App., 399 S.W.2d 944 (1966 N.R. E.), in an effort to determine the trend of the Texas courts concerning the extension of the doctrine announced in Jacob E. Decker & Sons, Inc. v. Capps, supra, as

well as many opinions from other jurisdictions.

Regardless of all that has been said by text writers in this state and case law from some other jurisdictions concerning the fall of the citadel of privity and the inevitability of the State of Texas becoming a part of the more "enlightened" jurisdictions capitulating to the attack upon that citadel, the fact still remains that our court of last resort has not disavowed its majority opinion in Bowman Biscuit Co. of Texas v. Hines, 151 Tex. 370, 251 S.W.2d 153. There, Justice Smith spoke for the 5–4 majority in distinguishing in strong language the difference in abandonment of privity between the consumer and manufacturer of food for human consumption (to which he agreed) and that of abandonment of privity between the retailer and wholesaler (the middle man) and the consumer, saying: *"The situation of wholesaler-retailer and consumer is properly governed by the rules of negligence law.* The retailer owes to the consumer the duty to supply goods packed by reliable manufacturers, and such as are without imperfections that may be discovered by an exercise of care, skill and experience of dealers in such products generally."* (All emphases added).

As a matter of fact: "Strict liability has been repudiated in strong language in Texas" by our Supreme Court, Klostermann v. Houston Geophysical Company, Tex.Civ. App., 315 S.W.2d 664 (writ ref.), except in food cases. In 1958 that court refused a writ outright in Klostermann v. Houston Geophysical Company, supra, wherein the "enlightened" view of strict liability was rejected where suit was filed for damages resulting from seismograph operations.

It is not easy to categorize the area of products liability into which our case must be placed. Certainly it is not in the food area, and those cases are used only for the general principles announced. If it could be said to be in the category of storage and use of explosives, then Texas has abandoned

the common law rule of absolute liability laid down in the old English case of Rylands v. Fletcher, (L.R. 3 H.L. 330) and predicate liability upon negligence, in the absence of controlling statutes or facts so obvious as to constitute a nuisance as a matter of law. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221, 224; Klostermann v. Houston Geophysical Co., supra.

Though N.R.E. cases, Brown v. Howard, Tex.Civ.App., 285 S.W.2d 752, and Cruz v. Ansul Chemical Company, supra, give some indication that as late as February 1956 (the date of the latter announcement) the Supreme Court of Texas had not capitulated to the liability without fault doctrine outside of food cases. At least it approved the result reached in these last two cited cases.

Appellant relies chiefly upon a case from the federal jurisdiction announced by our Fifth Circuit in 1964[1] wherein that court in a strong opinion held privity between user and manufacturer or assembler was unnecessary. That court stated the Supreme Court of Texas " * * * has not committed itself to a position on the necessity for privity as a prerequisite to recovery in non-food cases."

The function of the federal courts is to attempt to follow and apply the substantive law of the state where the litigation arose, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and to ascertain from all available data what the state law is. West v. American Teleph. & Teleg. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, 144 (1940). In the cited case of Putman v. Erie City Manufacturing Company the Fifth Circuit made an "educated guess" that:

"Today, the Supreme Court of Texas would follow Decker to its logical conclusion and rule that a manufacturer or assembler of a defective product, unreasonably dangerous to the user, is subject to strict liability to the user for an injury

caused by the defect, even though the product is not a food for human consumption, there is no proof of negligence, and there is no privity between the user and the manufacturer or assembler."

Even that statement does not guess the middle-man into liability without proof of privity between him and the user.

We are not unmindful of a new publication of the American Law Institute. The Restatement Of Law, (Second), Torts (1965) includes the following pronouncement:

" 'Sec. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

" '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" '(a) the seller is engaged in the business of selling such a product, and

" '(b) it is expected to and does reach the user or consumer without substantial change in condition in which it is sold.

" '(2) The rule stated in Subsection (1) applied although

" '(a) the seller has exercised all possible care in the preparation and sale of his product and

" '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

 It may well be that the Supreme Court of Texas may extend Decker into other areas some day and follow the American Law Institute in a proper case. However, we are obligated to follow the precedent that court has estalished until they change it. In Burrus Feed Mills, Inc. v. Reeder, Tex.Civ.App., 391 S.W.2d 121, we

---

1. Putman v. Erie City Manufacturing Company, 338 F.2d 911.

only extended the doctrine to animals that had been applied to humans in Decker for what we considered the very good reasons stated therein. Further, the fact still remains that most of the cases relied upon by plaintiff involve the manufacturer of the product in question—Jacob E. Decker & Sons, Inc. v. Capps, supra, manufacturers of sausage; Putman v. Erie City Manufacturing Company, supra, manufacturer and assembler of a wheelchair.

There is no statement of facts from which we may determine who manufactured the fertilizer tank in question. Plaintiff does not allege defendant was such manufacturer, but alleges it was negligently designed in order to create a hazardous condition in the event the relief valve popped off while anyone was attempting to remove the contents therefrom. Thus, the defendant here sought to be held liable was not the manufacturer of either the tank or its contents and the jury absolved it of using it as a defective vehicle to market its product when it found the fertilizer tank was not defective, not filled beyond its working pressure stamped thereon, and not overfilled to the point of being unsafe.

■ Since there is no statement of facts, every presumption must be indulged in favor of the trial court's judgment. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683; Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549; Commercial Credit Corporation v. Smith, 143 Tex. 612, 187 S.W.2d 363. We could, therefore, not review the evidence to determine if it was sufficient to support the jury findings. Hopkins v. Pence, Tex.Civ.App., 322 S.W.2d 321 (N.W. H.).

■ Since there must first be proof of a defective product or substance, and injury thereby even on the theory of implied warranty, Jacob E. Decker & Sons, Inc. v. Capps, supra, we believe appellant has failed to show any grounds for reversal under Rule 434, Texas Rules of Civil Procedure, which provides:

"* * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, * * *."

The judgment of the trial court is affirmed.

NORTHCUTT, Justice.

I concur in the result reached in the above opinion but I do not understand that the holding in the case of Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 applies only to food cases. I construe the case to hold it applies to articles that are injurious to human health or life. In considering the rule of implied warranty or liability without fault the court stated: "Liability in such case is not based upon negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of the public policy to protect human health and life." As I construe the holding of that case is that the implied warranty, so called, reaching from the manufacturer of articles to the ultimate purchaser for immediate use is in the nature of a representation that the highest degree of care has been exercised and is fit for the use for which it is sold, and if used as directed, it will not harm human health or life. For example, I am unable to distinguish the difference in effect of human suffering when a person uses an eye-wash solution that caused blindness and from sickness caused by eating improper food.